IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEBORAH ARMELLINI, *et al.*
    *Plaintiffs*

     v.

SCOTT M. LEVIN, *et al.*
    *Defendants.*

Civil Action No. ELH-19-794

## MEMORANDUM OPINION

This suit concerns a life insurance policy purchased by plaintiffs Deborah Armellini and

Armellini Management Company through defendant Scott M. Levin, an alleged agent and/or

employee of defendant Worthington Financial Partners, LLC ("Worthington"), a subsidiary of Life

Insurance Company of the Southwest. ECF 1 (the "Complaint").[1] Plaintiffs allege that in

November 2009, Mr. Levin, a Financial Advisor, induced them to purchase an Indexed Universal

Life Insurance Policy (the "Policy") from the Life Insurance Company of the Southwest ("LICS"),

and to continue investing in the Policy by misrepresenting the Policy's true features, causing

plaintiffs to lose over $250,000.[2]

The Complaint contains five counts. Count I, lodged against Mr. Levin, alleges a common

law claim for conversion. ECF 1, ¶¶ 27-31. In Count II, plaintiffs assert a cause of action against

Mr. Levin for breach of fiduciary duty. *Id.* ¶¶ 32-38. Count III, also lodged against Mr. Levin,

---

[1] Jurisdiction is founded on diversity of citizenship. 28 U.S.C. § 1332. Ms. Armellini is a
citizen of Virginia. ECF 1, ¶ 4. The Armellini Management Company is also a citizen of Virginia
because it is incorporated in Virginia and has its principal place of business there. *Id.* ¶ 5. Mr.
Levin is a citizen of Maryland. *Id.* ¶ 6. And, Worthington is a citizen of Maryland because its
sole member, John Scarcella, is a citizen of Maryland. ECF 14.

[2] According to Mr. Levin, he is a Certified Financial Planner. *See*, *e.g.*, ECF 23, ¶ 1.

alleges fraudulent misrepresentation. *Id.* ¶¶ 39-45. Count IV asserts a claim against Worthington for breach of fiduciary duty. *Id.* ¶¶ 46-54. And, in Count V, plaintiffs assert a claim against Worthington for fraudulent misrepresentation. *Id.* ¶¶ 55-61.

Defendants have jointly moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 21. The motion is supported by a memorandum of law (ECF 21-1) (collectively, the "Motion"), and one exhibit. ECF 21-2. Plaintiffs oppose the Motion (ECF 27), and defendants have replied. ECF 28.

Pursuant to Fed. R. Civ. P. 14(a), defendants filed a third-party complaint against Ms. Armellini's tax advisor, Simcha Baer, a licensed Certified Public Accountant. ECF 23 (the "Third-Party Complaint). According to defendants, to the extent that they are liable, so too is Mr. Baer, because he facilitated the initial meeting between Ms. Armellini and Mr. Levin in November 2009, participated in the planning, and provided investment advice to Ms. Armellini in regard to the Policy. The Third-Party Complaint lodges claims against Mr. Baer for "Implied Indemnity" (Count I) and "Contribution" (Count II).

Mr. Baer has filed a pre-discovery motion to dismiss or, in the alternative, for summary judgment, pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56. ECF 33 (the "Baer Motion"). An affidavit from Mr. Baer is appended to the Baer Motion. ECF 33-1. Defendants oppose the Baer Motion (ECF 36), which is supported by an affidavit from Mr. Levin. ECF 36-1. Mr. Baer has replied. ECF 39.

No hearing is necessary to resolve the motions *See* Local Rule 105.6. For the reasons that follow, I shall grant defendants' Motion (ECF 27) in part and deny it in part. And, construing the Baer Motion as one for summary judgment, I shall grant the Baer Motion (ECF 33).

# I.    Factual Background

## A.   The Armellini Complaint[3]

Ms. Armellini met with Mr. Levin on November 24, 2009, to discuss life insurance policies.  ECF 1, ¶¶ 13-14.  According to plaintiffs, Mr. Levin worked as a "Financial Advisor" for Worthington, a subsidiary of LICS.  *Id.* ¶ 13; *see id.* ¶ 7.  Mr. Levin "advised" Ms. Armellini to purchase the Policy from LICS.  *Id.* ¶ 13.  He represented to Ms. Armellini that the Policy was indexed to the stock market.  *Id.* ¶ 16.  And, he allegedly "promised" Ms. Armellini that "within 10 years of taking out the policy, the cash value of the policy would be, at least, equal to the total investment."  *Id.* ¶ 17.  The same day, Ms. Armellini and Mr. Levin executed an "'Application for Life Insurance,' which included representations made by Mr. Levin and Worthington[.]"  *Id.* ¶ 15.

Based on Mr. Levin's statements, plaintiffs began investing $75,000 per year in the Policy.  *Id.* ¶ 18.  In total, they invested over $475,000 in the Policy.  *Id.* ¶ 19.

Plaintiffs allege that Mr. Levin "repeatedly advised [them] that the cash value of the policy would equal Ms. Armellini's contributions" and that, "despite the fact that the cash value of the policy [was] continually declining, all 'was well.'"  *Id.* ¶ 21.  Further, on January 5, 2015, Mr. Levin emailed Ms. Armellini, stating that the cash value of the Policy "would be 'at least' equal to the amount of Ms. Armellini's contributions after 10-years from the initial policy investment."  *Id.* ¶ 21.

However, "[t]his promise never came to fruition."  *Id.* ¶ 22.  Instead, the Policy's value "plummeted."  *Id.*  Plaintiffs allegedly learned in April 2018, that the Policy had only a three percent fixed rate of return, the funds were not invested in stock indices, and the Policy allocated

---

[3] At this stage, the Court accepts as true all allegations in the Complaint and draws all reasonable inferences in favor of plaintiffs.

$72,000 of plaintiff's annual investments to premiums. *Id.* ¶ 23. As a result, "the cash value of the Policy [was] quickly depleted." *Id.* According to plaintiffs, they lost approximately $250,000 by investing in the Policy. *Id.* ¶ 24.

### B. The Third-Party Action[4]

Mr. Baer was a Certified Public Accountant ("CPA"), whose practice included providing tax advice and form preparation for small businesses. ECF 33-2, ¶ 2.[5] However, he is not a Certified Financial Planner, nor is he licensed to sell life insurance. *Id.* ¶¶ 4, 5. Plaintiffs "were long-term clients" of Mr. Baer's. *Id.* ¶ 3; *see* ECF 23, ¶¶ 7-9.

According to Mr. Levin, Mr. Baer facilitated a meeting in November 2009 between Ms. Armellini, Mr. Levin, Mr. Baer, and Clifford Kwartner, an agent of NLV,[6] to discuss investment strategy. ECF 36-2, ¶¶ 6, 8; *see also* ECF 23, ¶ 13. During the meeting, Mr. Baer and Mr. Levin proposed a plan for Ms. Armellini to purchase the Policy. ECF 36-2, ¶ 8; ECF 23, ¶ 13. Specifically, they proposed that Ms. Armellini "fund $150,000 per year for an initial five-year period into a fixed account," and then "move the funds into an indexed portion of the [P]olicy, where it would remain and continue to grow on a tax-deferred basis." ECF 36-2, ¶ 9; ECF 23, ¶ 14; *see* ECF 36-2, ¶ 9. Further, Mr. Baer and Mr. Levin proposed that Ms. Armellini purchase a separate Term Life Insurance Policy for an initial five-year period, after which it would be

---

[4] As discussed, *infra*, I shall construe the Baer Motion as a motion for summary judgment under Fed. R. Civ. P. 56. Therefore, the factual background is drawn both from the Third-Party Complaint (ECF 23) as well as the affidavits submitted by Mr. Baer (ECF 33-2) and Mr. Levin (ECF 36-2).

[5] Mr. Baer avers that his CPA license is "currently inactive." ECF 33-2, ¶ 2.

[6] The Third-Party Complaint does not define "NLV," or explain the role Mr. Kwartner played in the transaction. ECF 23.

converted into another Indexed Life Insurance Policy, with tax benefits. ECF 36-2, ¶ 10; ECF 23, ¶ 15.

Mr. Levin states that he presented this proposal to Ms. Armellini only after Mr. Baer "expressed his opinion during the meeting as to the amounts that Ms. Armellini should fund, or would be able to fund, over an initial 5-year period." ECF 36-2, ¶ 11; *see* ECF 23, ¶ 16. Further, he states that Mr. Baer "specifically recommended, endorsed and approved" the proposed investment strategy. ECF 36-2, ¶ 13; *see* ECF 23, ¶ 17.

Ms. Armellini, relying on Mr. Baer's recommendation, proceeded to purchase the Policy and Term Life Insurance Policy from Mr. Levin. ECF 36-2, ¶ 14; ECF 23, ¶ 18. But, according to defendants, Ms. Armellini "eventually ceased to fund the policies, allegedly due to a change in circumstances in her business." ECF 36-2, ¶ 15; *see* ECF 23, ¶ 19.

Mr. Levin paid Mr. Baer a consulting fee of $3,850 on November 30, 2010. ECF 36-2, ¶ 16. And, Mr. Levin states that he believes Mr. Kwartner paid Mr. Baer a consulting fee in the same amount. *Id.* ¶ 17.

Mr. Baer does not dispute that he attended the meeting in November 2009 with Ms. Armellini and Mr. Levin. But, he denies that he ever advised plaintiffs "regarding the investment aspects of the insurance policies []or make any guarantees regarding returns on the policies." ECF 33-2, ¶ 10. Although Mr. Baer does not indicate whether he received fees for facilitating the meeting, he maintains that he never collected any premiums on the Policy. *Id.* ¶ 11.

## II. Choice of Law

The parties assume, without discussion, that Maryland law applies to this diversity case. In an action based upon diversity of citizenship, a federal court must apply the substantive law of the state in which it sits, including that state's choice of law rules. *Klaxon Co. v. Stentor Elect.*

*Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007); *Baker v. Antwerpen Motorcars, Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011).

Maryland is, of course, the forum state. Under Maryland's choice-of-law principles for tort claims, Maryland applies the doctrine of *lex loci delecti*, *i.e.*, the law of the jurisdiction where the alleged wrong occurred. *Lewis v. Waletzky*, 422 Md. 647, 657, 31 A.3d 123, 129 (2011); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 620, 925 A.2d 636, 648 (2007); *Kortobi v. Kass*, 182 Md. App. 424, 443, 957 A.2d 1128, 1139 (2008), *aff'd*, 410 Md. 168, 978 A.2d 247 (2009).

Defendants are both citizens of Maryland. *See* ECF 1, ¶¶ 6-7; ECF 14. Mr. Baer is also a citizen of Maryland. ECF 23, ¶ 3; ECF 33-1, ¶ 1. Therefore, it seems likely that the allegedly tortious conduct of defendants and Mr. Baer occurred in Maryland. In any event, all parties rely on Maryland law in their submissions. *See* ECF 21; ECF 27; ECF 28; ECF 33; ECF 36; ECF 39. And, in a case where the parties have not identified any state law conflicts, the court need not undertake a choice-of-law analysis. *See Cleaning Authority, Inc. v. Neubert*, 739 F. Supp. 2d 807, 820 (D. Md. 2010) ("'Choice-of-law analysis becomes necessary . . . only if the relevant laws of the different states lead to different outcomes.'" (citation omitted)); *see also Vanderhoof-Forschner v. McSweegan*, 215 F.3d 1323 (Table) at *2 n.2 (4th Cir. 2000) ("[B]ecause the parties implicitly agree that Maryland law governs their claims, [the Court] need not inquire further into the choice-of-law questions."). Accordingly, I shall apply the substantive law of Maryland.

### III.   Standards of Review

#### A. Rule 12(b)(6)

Defendants move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). ECF 21. A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under

Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, *Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting

*Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman*).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger*, 510 F.3d at 450.

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC,* 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg*

*v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). Notably, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, __ U.S. __, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

In support of defendants' Motion, defendants filed a copy of a record of the Maryland Department of Assessments and Taxation for Worthington. ECF 21-2. This document is publicly available, and plaintiffs do not challenge its authenticity. Accordingly, I may take judicial notice of this exhibit.

### B. Rule 9(b)

To the extent that plaintiffs' suit lodges fraud claims against Mr. Levin and Worthington, Fed. R. Civ. P. 9(b) is pertinent. Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

As a preliminary matter, claims that sound in fraud, whether rooted in common law or arising under a statute, implicate the heightened pleading standard of Fed. R. Civ. P. 9(b). *See, e.g.*, *E-Shops Corp. v. U.S. Bank N.A.*, 678 F.3d 659, 665 (8th Cir. 2012) ("Rule 9(b)'s heightened pleading requirement also applies to statutory fraud claims."); *see also Spaulding v. Wells Fargo*

*Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (stating that an MCPA claim that "sounds in fraud[] is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)").

Under the rule, a claim that sounds in fraud "'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *U.S. ex rel. Nathan v. Takeda Pharms. N.A., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (citation omitted). In other words, Rule 9(b) requires the plaintiff to plead "the who, what, when, where, and how of the alleged fraud" before the parties can proceed to discovery. *U.S. ex rel. Wilson v. Kellogg Brown & Root*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotation marks omitted)

Rule 9(b) serves several salutary purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of. . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted).

However, by its plain text, Rule 9(b) permits general averment of aspects of fraud that relate to a defendant's state of mind. And, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.* Moreover, Rule 9(b) is "less strictly applied with respect to claims of fraud by concealment" or omission of material facts, as opposed to affirmative misrepresentations, because "an omission 'cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the

misrepresentation.'" *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997) (quoting *Flynn v. Everything Yogurt*, HAR-92-3421, 1993 WL 454355, at *9 (D. Md. Sept. 14, 1993)).

## C. Rule 56

As noted, the Baer Motion is styled as a "Motion to Dismiss Or, In The Alternative, Motion For Summary Judgment." ECF 33. A motion styled in the alternative implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[7]

---

[7] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. 2018). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.*

In general, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). As the Fourth Circuit has observed, when a district judge rules on a summary judgment motion prior to discovery, it is akin to "for[cing] the non-moving party into a fencing match without a sword or mask." *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *accord Putney v. Likin*, 656 F. App'x 632, 639 (4th Cir. 2016) (per curiam).

However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule

---

one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

To justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be "essential" to the opposition. Fed. R. Civ. P. 56(d). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874 (4th Cir. 2019); *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008) (per curiam), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an

affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Defendants have not filed an Affidavit under Rule 56(d). Nor do they shirk from consideration of the Baer Motion as one for summary judgment. To the contrary, defendants sought to counter the evidence adduced by Mr. Baer by submitting an affidavit from Mr. Levin. *See* ECF 36 at 2 n.1; ECF 36-1 (Levin Affidavit). And, they argue in their opposition that there are genuine disputes of material fact. ECF 36 at 8. Thus, the Court shall consider the Baer Motion under Fed. R. Civ. P. 56.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion

for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. But, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see also Celotex*, 477 U.S. at 322-24. And, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *Ricci*, 557 U.S. at 585-86; *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587; *accord Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Variety Stores, Inc.*, 888 F.3d at 659; *Gordon*, 890 F.3d at 470; *Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

## IV. Discussion

### A. Defendants' Motion

Defendants urge the dismissal of Worthington from the suit on the ground that Worthington did not exist at the time the alleged tortious conduct occurred. ECF 21-1 at 5-6. Further, defendants move to dismiss the claims against Mr. Levin. They contend that plaintiffs fail to state a plausible conversion claim; plaintiffs' breach of fiduciary duty claim fails as a matter of law; and, plaintiffs' fraudulent misrepresentation claim fails to satisfy Rule 9(b)'s heightened pleading standards. *Id.* at 6-14.

#### 1. Worthington (Counts IV and V)

Plaintiffs lodge two claims against Worthington. In Count IV, plaintiffs assert a claim for breach of fiduciary duty, alleging that Mr. Levin, while acting as an agent of Worthington, breached his "fiduciary duty to safeguard Plaintiffs [sic] investment" by "mismanaging the

investment and proceeds" and by "misleading the Plaintiffs to invest the funds into a Policy that would reap Mr. Levin a large, personal, commission." ECF 1, ¶¶ 49-53. In Count V, plaintiffs set forth a claim of fraudulent misrepresentation, based on vicarious liability. *Id.* ¶¶ 56-61.

Defendants move to dismiss these claims, contending that Worthington did not exist at the time Mr. Levin allegedly engaged in tortious conduct. ECF 21-1 at 5. According to defendants, the breach of fiduciary duty and fraudulent misrepresentation claims rest on four factual allegations in the Complaint, *id.* (quoting ECF 1, ¶¶ 13-15, 21):

> 13. On November 24, 2009, Mr. Levin, while employed by Worthington Financial Partners, LLC, advised Ms. Armellini to purchase an Indexed Universal Life Insurance Policy from Life Insurance Company of the Southwest.
>
> 14. Mr. Levin was a financial adviser, and an actual and or apparent agent, servant or employee of Worthington Financial Partners, LLC.
>
> 15. On November 24, 2009, Plaintiffs and Mr. Levin entered into a written Agreement titled Application for Life Insurance, which included representations made by Mr. Levin and Worthington Financial Partners, LLC.
>
> 21. In fact, on January 5, 2015, Mr. Levin again assured Ms. Armellini, via email, that the cash value of her property would be "at least" equal to the amount of Ms. Armellini's contributions after ten-years from the initial policy investment.

But, defendants maintain that Worthington was not organized as a Maryland limited liability company ("LLC") until January 2016. ECF 21-1 at 6. To support this contention, defendants point to the record of the Maryland Department of Assessment and Taxation, which lists Worthington's date of registration as January 5, 2016. ECF 21-2 at 2. Thus, defendants posit that it is "factually impossible" for Worthington to be liable for Mr. Levin's conduct. *Id.*

Plaintiffs do not dispute that Worthington was not formed until 2016. Instead, they contend that they have alleged plausible claims against Worthington, because the Complaint "states a course of conduct that was perpetuated and concealed through 2018, long after Worthington Financial Partners was formed." ECF 27 at 2. In particular, plaintiffs point to the Complaint's

allegation that "'Mr. Levin repeatedly advised Ms. Armellini and Armellini Management Company that the cash value of the policy would equal Ms. Armellini's contributions, despite the fact that the cash value of the policy continually declined[.]'" *Id.* (quoting ECF 1, ¶ 21).

In Maryland, under the doctrine of respondeat superior, "'an employer is ordinarily responsible for the tortious conduct of his employee committed while the servant was acting within the scope of the employment relationship.'" *Barclay v. Briscoe*, 427 Md. 270, 282, 47 A.3d 560, 567 (2012) (quoting *Embrey v. Holly*, 293 Md. 128, 134, 442 A.2d 966, 969 (1982) ); s*ee Asphalt & Concrete Services, Inc. v. Perry*, 221 Md. App. 235, 272, 108 A.3d 558, 580 (2015), *aff'd*, 447 Md. 31, 133 A.3d 1143 (2016). Therefore, to state a claim for vicarious liability, the plaintiff must plead the existence of an agency relationship between the defendant and the tortfeasor and that the agent was acting within the scope of their agency when they committed the alleged torts. *See Schramm v. Foster*, 341 F. Supp. 2d 536, 543 (D. Md. 2004); PAUL MARK SANDLER, JAMES K. ARCHIBALD, & PAUL JORGENSEN, PLEADING CAUSES OF ACTION IN MARYLAND § 3.195 (6th ed. 2018)

As noted, Rule 8 does not demand that a plaintiff plead "'detailed factual allegations'" to state plausible claims. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). But, a "complaint must contain sufficient factual matter" that, if accepted as true, "'state[s] a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus, mere "naked assertions devoid of further factual enhancement" do not amount to a plausible claim. *Iqbal*, 556 U.S. at 678 (brackets and internal quotation marks omitted).

Plaintiffs' gauzy allegations against Worthington do not survive a challenge under Rule 12(b)(6). Plaintiffs allege that Mr. Levin, while acting as an agent of Worthington, induced plaintiffs to purchase the Policy in 2009 by misrepresenting the Policy's projected growth. ECF

1, ¶ 13.  And, plaintiffs assert that in 2015 Mr. Levin falsely reassured Ms. Armellini of the Policy's projected growth.  *Id.* ¶ 21.  However, Worthington cannot be held vicariously liable for this conduct because Worthington was not organized as a LCC until January 5, 2016.  *See* ECF 21-2.

Plaintiffs' other allegations against Worthington fare no better.  The bare-bones assertion that Mr. Levin "repeatedly advised Ms. Armellini and Armellini Management Company" as to the Policy's value, ECF 1, ¶ 20, lacks sufficient factual detail to link Worthington to Mr. Levin.  Put differently, while this unadorned contention makes Worthington's liability to plaintiffs conceivable, it is not enough to make it plausible.  *See Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 260 (4th Cir. 2009) (dismissing claims where allegations "allow[ed] [the court] to infer no more than 'the mere possibility' that [the defendant] was responsible for the creation or development of the allegedly defamatory content at issue." (quoting *Iqbal*, 556 U.S. at 679)).  What remains is plaintiffs' allegation that they "learned" of the Policy's poor performance in April 2018.  ECF 1, ¶ 23.  Yet, this allegation concerns plaintiffs, not Mr. Levin or Worthington.

In sum, because the Armellini Complaint is devoid of factual allegations concerning unlawful conduct that occurred after Worthington's organization, plaintiffs have failed to state plausible claims against Worthington.  Therefore, I shall grant the Defendants' Motion as to Counts IV and V.

### 2.  Conversion (Count I)

In Count I, plaintiffs assert a common law claim of conversion against Mr. Levin.  ECF 1, ¶¶ 27-31. Defendants maintain that the allegations underlying this claim "fall woefully short of supporting a plausible claim for conversion[.]"  ECF 21-1 at 11.  In their view, "[t]he facts as alleged, simply do not support a claim that Mr. Levin wrongfully deprived Plaintiffs of any

property to which they otherwise were entitled, and there was no wrongful, tortious, or unlawful taking of property from Plaintiffs' possession by Mr. Levin." *Id.* Further, defendants aver that the Complaint fails to allege that Mr. Levin possessed the requisite scienter to commit the tort of conversion. *Id.* at 11-12. Instead, defendants posit that the Complaint "simply suggest[s] that Plaintiffs invested a sum of money with an expectation that they would receive a certain rate of return on their investment, based on alleged representations and recommendations made to them by Mr. Levin, and ultimately they did not receive the expected return on investment." *Id.* at 12.

Conversion is an intentional tort. It consists of two elements: a physical act "combined with a certain state of mind." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 261, 841 A.2d 828, 835 (2004). "The physical act can be summarized as 'any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it.'" *Id.* (citations omitted). The requisite intent is "an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 414, 494 A.2d 200, 208 (1985). "The defendant may have the requisite intent even though he or she acted in good faith and lacked any consciousness of wrongdoing, as long as there was an intent to exert control over the property." *Darcars*, 379 Md. at 262, 841 A.2d at 836.

In the Complaint, plaintiffs allege that, "without Plaintiffs' knowledge and understanding," Mr. Levin "permanently deprived Plaintiffs of excessive premiums," which depleted Plaintiff's investment by over $250,000." ECF 1, ¶ 28. According to plaintiffs, Mr. Levin did so "for his own benefit," *id.* ¶ 29, and, they assert that Mr. Levin "has refused to return the investment to Plaintiff after demand." *Id.* ¶ 30.

These "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," fail the Rule 12(b)(6) plausibility standard. *Iqbal*, 556 U.S. at 674. As an initial matter, plaintiffs do not allege any facts to support the assertion that Mr. Levin took control of any of the funds that plaintiffs invested in the Policy. Nor do they allege with any specificity the amount of plaintiffs' assets that Mr. Levin unlawfully obtained. ECF 1, ¶ 23. Moreover, even crediting plaintiffs' conclusory assertion that Mr. Levin obtained "excessive premiums" in connection with the Policy, plaintiffs wholly fail to allege that these assets were their "personal property" or that Mr. Levin's dominion over the premiums was "in denial of [their] right or inconsistent with it." *Darcars*, 379 Md. at 261, 841 A.2d at 835. In short, the Complaint fails to plausibly allege that Mr. Levin performed a physical act that could support a conversion claim.

Accordingly, Count I is subject to dismissal.

### 3. Breach of Fiduciary Duty (Count II)

Counts II alleges a claim of breach of fiduciary duty against Mr. Levin. ECF 1, ¶¶ 32-38. Plaintiffs assert that Mr. Levin owed plaintiffs a fiduciary duty "as the custodian and protector of the policy and its premiums" and due to his position "as a registered securities broker[] and financial advisor[.]" *Id.* ¶¶ 33-34. However, Mr. Levin allegedly "breached his fiduciary duty to Plaintiffs by mismanaging the investment/proceeds, and, upon information and belief, misleading the Plaintiffs to invest the funds into a Policy that would reap Mr. Levin a large, personal, commission." *Id.* ¶ 37.

Defendants contend that Count II fails as a matter of law because "[i]t is well-settled that Maryland does not recognize a stand alone cause of action for breach of fiduciary duty in a claim solely for monetary damages[.]" ECF 21-1 at 6 (citing *George Wasserman Goldsten Family LLC v. Kay*, 197 Md. App. 586, 631-32, 14 A.3d 1193, 1219 (2011)).

Defendants' assertion sweeps broadly. Nevertheless, I agree that under Maryland law, a purported breach of fiduciary duty does not "constitute a stand alone nonduplicative cause of action." *Wasserman*, 197 Md. App. at 631-32, 14 A.3d at 1219.

"A fiduciary relationship exists when one party is under a duty to act or give advice for the benefit of another." PAUL MARK SANDLER & JAMES K. ARCHIBALD, PLEADING CAUSES OF ACTION IN MARYLAND § 3.209.A, at 436 (4th ed. 2008) (citing *Restatement (Second) of Torts* § 874 cmt. a (1979); *Restatement (Second) of Trusts* § 2 cmt. b (1959)). Moreover, "[o]ne who breaches his or her duty as a fiduciary may be liable under various causes of action to those harmed by the breach of that duty." *Id.* However, the cases and commentary indicate that under Maryland law, a claim for breach of fiduciary duty exists only "where the breach is alleged as an element of the cause of action—not as a separate cause of action itself." *Id.* The Maryland Court of Appeals stated in *Kann v. Kann*, 344 Md. 689, 713, 690 A.2d 509, 521 (1997):

> [T]here is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries. This does not mean that there is no claim or cause of action available for breach of fiduciary duty. Our holding means that identifying a breach of fiduciary duty will be the beginning of the analysis, and not its conclusion. Counsel are required to identify the particular fiduciary relationship involved, identify how it was breached, consider the remedies available, and select those remedies appropriate to the client's problem.

In *International Brotherhood of Teamsters v. Willis Corroon Corporation of Maryland*, 369 Md. 724, 801 A.2d 1050 (2002), the Maryland Court of Appeals explained, *id.* at 727 n.1, 801 A.2d at 1052 n.1:

> In *Kann v. Kann*, 344 Md. 689, 713, 690 A.2d 509, 520–21 (1997), we pointed out that, although the breach of a fiduciary duty may give rise to one or more causes of action, in tort or in contract, Maryland does not recognize a separate tort action for breach of fiduciary duty. Based on the underlying averments, [plaintiff] may have been able to plead an action for breach of contract, in addition to its claim for negligence, but it chose not to do so. We shall treat the complaint as one for negligence.

*See also Vinogradova v. Suntrust Bank*, 162 Md.App. 495, 510, 875 A.2d 222, 231 (2005) ("[U]nder Maryland law, the two separately pleaded claims in [the] complaint," *i.e.*, a claim for negligence and a claim for breach of fiduciary duty, "condense to only one: the claim based on the tort of negligence.").

*Wasserman*, 197 Md. App. 586, 14 A.3d 1193, is also instructive. There, the plaintiff sought, *inter alia*, money damages for breach of contract, negligence, and breach of fiduciary duty. *Id.* at 631, 14 A.3d at 1219. The Maryland Court of Special Appeals noted that Maryland law does not, at present, "obliterate the possibility of a separate cause of action for breach of fiduciary duty in an action seeking equitable relief ." *Id.* However, "[i]n a claim for monetary damages at law . . . an alleged breach of fiduciary duty may give rise to a cause of action, but it does not, standing alone, constitute a cause of action." *Id.* In affirming the circuit court's ruling to dismiss that count, the court concluded that the allegations in the plaintiff's breach of fiduciary duty claim were "relevant to other causes of action," such as the breach of contract or negligence causes of action, but they did not "constitute a stand alone nonduplicative cause of action." *Id.* at 631-32, 14 A.3d at 1219.

Courts applying Maryland law have taken different views as to whether *Kann* permits a plaintiff to pursue a claim for breach of fiduciary duty. *See Adobe Sys Inc. v. Gardiner*, 300 F. Supp. 3d 718, 725-26 (D. Md. 2018) (collecting cases). Some have allowed the claim where the plaintiff specifically identified the fiduciary relationship at issue and the manner in which the defendant breached that duty. *See Adobe Sys Inc.*, 300 F. Supp. 3d at 725-28 (adopting a claim-specific analysis); *BEP, Inc. v. Atkinson*, 174 F. Supp. 2d 400, 405-06 (D. Md. 2001). Conversely, others have interpreted *Kann* to prohibit a stand-alone cause of action. *See Fidelity & Guar. Life Ins. Co. v. Sharma*, RBD-17-1508, 2019 WL 1430100, at *1 (D. Md. Mar. 29, 2019); *Miller v.*

*Strudwick*, GLR-14-2303, 2018 WL 4679730, at *7 (D. Md. Sept. 28, 2018); *Dell v. DeTar,* JFM-16-00887, 2017 WL 3835679, at *8 (D. Md. Aug. 31, 2017); *Walker v. Nationstar Mortgage LLC*, JKB-16-2939, 2017 WL 588465, at *2 (D. Md. Feb. 13, 2017). Still others have acknowledged the possibility of a freestanding breach of fiduciary duty claim, but only where the plaintiff seeks equitable remedies. *See Allstate Ins. Co. v. Warns*, CCB-11-1846, 2012 WL 681792, at *7 (D. Md. Feb. 29, 2012).

As the cases and commentary make clear, a purported breach of fiduciary duty for monetary damages does not constitute a separate and distinct cause of action under Maryland law. To be sure, Mr. Levin may have owed a fiduciary duty to plaintiffs. That alleged breach of fiduciary duty may buttress plaintiffs' other claims. But, it does not give rise to a separate cause of action of its own. Therefore, I shall dismiss Count II.

### 4. Fraud (Count III)

Count III alleges a claim of fraudulent misrepresentation against Mr. Levin. ECF 1, ¶¶ 39-45. Plaintiffs assert that Mr. Levin "perpetrated a scheme to induce Plaintiffs to invest their funds in the operative Policy, in his capacity as a broker and financial advisor, with the promise that the value of the policy would equal the investment." *Id.* ¶ 40. Further, plaintiffs assert that Mr. Levin intended to [sic] Plaintiffs to act on th[ose] knowingly false representations[.]" *Id.* ¶ 42.

In the defendants' Motion, they contend that the these allegations do not clear the hurdle established by Rule 9(b) because the Complaint is devoid of any allegation that Mr. Levin made any statements regarding the Policy "that were known to be false or were made with reckless indifference to its truth" or "for the specific purpose of defrauding Plaintiffs." ECF 21-1 at 13.

Under Maryland law, "'[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement.'" *Sass v. Andrew*, 152

Md. App. 406, 432, 832 A.2d 247, 261 (2003) (citation omitted).  Notably, "a cause of action for

fraud" has "a strict requirement of scienter." *First Union Nat'l Bank v. Steele Software Sys. Corp*.,

154 Md. App. 97, 147, 838 A.2d 404, 433 (2003). "Recovery in a tort action for fraud or deceit in

Maryland is based upon a defendant's deliberate intent to deceive." *Id.*; *see VF Corp. v. Wrexham

Aviation Corp*., 350 Md. 693, 704, 715 A.2d 188 (1998); *Sass*, 152 Md. App. at 430, 832 A.2d at

260.

In an action for intentional or fraudulent misrepresentation, which is the garden variety of

fraud and is often described simply as "fraud," the plaintiff ultimately must show:

> (1) that the defendant made a false representation to the plaintiff;
>
> (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth;
>
> (3) that the misrepresentation was made for the purpose of defrauding the plaintiff;
>
> (4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and
>
> (5) that the plaintiff suffered compensable injury resulting from the misrepresentation."

*Nails v. S & R, Inc.,* 334 Md. 398, 415, 639 A.2d 660, 668 (1994); *accord Thomas v. Nadel*, 427

Md. 441, 451 n.18, 48 A.3d 276, 282 n.18 (2012); *Gourdine v. Crews*, 405 Md. 722, 758, 955 A.2d

769, 791 (2008); *Sass*, 152 Md. App. at 429, 832 A.2d at 260.

Of relevance at this stage, a fraud claim implicates the heightened pleading standard of

Fed. R. Civ. P. 9(b).  *See, e.g.*, *First Kuwaiti Gen'l Trading & Contracting Co.,* 612 F.3d at 731.

And, at trial the plaintiff must establish the elements of fraud "by clear and convincing evidence."

*Md. Envir. Trust v. Gaynor*, 370 Md. 89, 97, 803 A.2d 512, 516 (2002).

To be actionable, a false representation "must be of a material fact." *Gross v. Sussex, Inc.*,

332 Md. 247, 258, 630 A.2d 1156, 1161 (1993). "A 'material' fact is one on which a reasonable

person would rely in making a decision," *Sass*, 152 Md. App. at 430, 832 A.2d at 260, or a fact that "'the maker of the misrepresentation knows . . . [the] recipient is likely to regard . . . as important.'" *Gross*, 332 Md. at 258, 630 A.2d at 1161 (citation omitted). And, the defendant must "know[ ] that his representation is false" or be "recklessly indifferent in the sense that he knows that he lacks knowledge as to its truth or falsity." *Ellerin v. Fairfax Savings, F.S.B*., 337 Md. 216, 232, 652 A.2d 1117 (1995).

Of import here, a claim of fraud cannot be predicated on statements that are merely "'expressions as to what will happen in the future.'" *Sass*, 152 Md. App. at 438, 832 A.2d at 265 (quoting *Levin v. Singer*, 227 Md. 47, 63, 175 A.2d 423, 432 (1961)); *see Highlands Office Park Three, LLC v. GE Commercial Fin. Bus. Prop. Corp*., WDQ-08-2972, 2009 WL 10682225, at *4 n.7 (D. Md. Feb. 25, 2009); *Cooper v. Berkshire Life Ins. Co.*, 148 Md. App. 41, 73, 810 A.2d 1045, 1064 (2002).

That said, "a promise made to induce another to execute a contract, which the promisor never intended to perform, may create liability for fraud." *Sass*, 152 Md. App. at 432, 832 A.2d at 262 (citing *Councill v. Sun Ins. Office*, 146 Md. 137, 150, 126 A. 229, 234 (1924)). It follows that "an action for fraud may not be dismissed on this basis if the alleged fraud is based on a defendant's promise that is made with the present intention not to perform that promise." *Aloi v. Moroso Inv. Partners, LLC*, 2012 WL 4341741, at *4 (D. Md. Sept. 20, 2012) (citing *Sass*, 152 Md. App. at 436, 832 A.2d at 264). On the other hand, the "failure to fulfill a promise is merely a breach of contract." *Kerr v. Johns Hopkins Univ*., L-10-3294, 2011 WL 4072437, at *7 (D. Md. Sept. 12, 2011) (quoting *Sass*, 152 Md. App. at 438, 832 A.2d at 265), *aff'd*, 473 F. App'x 246 (4th Cir. 2012), *cert. denied*, 568 U.S. 1124 (2013).

Thus, Maryland cases distinguish "between statements that are 'a prediction or an expression of expectation concerning external events' and those that are 'relate[d] to matters within the speaker's control.'" *Carroll Co. v. Sherwin-Williams Co.*, 848 F. Supp. 2d 557, 569 (D. Md. 2012) (quoting *Gross*, 332 Md. at 272, 630 A.2d at 1169 (alteration in *Carroll*)). Therefore, a predictive statement by a speaker who holds himself out as "knowledgeable in a particular field" may support a claim of fraud "where the circumstances indicate . . . that the speaker has a factual basis for his predictions so that the existence of facts is implied by the representations." *Cooper*, 148 Md. App. at 73-74, 810 A.2d at 1064 (citation omitted); *see also Hale Trucks of Md., LLC v. Volvo Trucks North Am., Inc.*, 224 F.Supp.2d 1010, 1031-32 (D. Md. 2002).

Plaintiffs allege that Mr. Levin induced them to purchase the Policy by representing that the Policy "was indexed to the stock market" and that "within 10 years of taking out the policy, the cash value of the policy would be, at least, equal to the total investment." ECF 1, ¶¶ 16-17. Further, plaintiffs allege that Mr. Levin advised in 2015 that "the cash value of her policy would be 'at least' equal to the amount of Ms. Armellini's contributions after 10-years from the initial policy investment." *Id.* ¶ 21. However, according to plaintiffs, these statements were not true because plaintiffs' funds were never invested in any stock index or equities" but rather "invested in a policy with a 3% fixed rate of return" that charged exorbitant annual premiums. *Id.* ¶ 23. Mr. Levin allegedly made those statements knowing they were false in order to "induce Plaintiffs to invest their funds in the operative Policy[.]" *Id.* ¶ 40; *see id.* ¶¶ 41-42.

To the extent that these representations are predictions about how the Policy would perform in the future, they do not constitute fraudulent misrepresentation. But, the Complaint teems with allegations that otherwise support a claim for fraudulent misrepresentation. For example, plaintiffs allege that in 2009, Mr. Levin promised plaintiffs that the Policy would be indexed to the stock

market, a statement that was false because the Policy in fact had a fixed rate of return. *See id.* ¶¶ 16, 23, 42. And, plaintiffs assert that Mr. Levin "repeatedly" told plaintiffs that the Policy's cash value would equal Ms. Armellini's contributions, implying that the investment was growing, a representation that was untrue because the Policy provided a fixed rate of return and allocated the bulk of plaintiffs' investments toward premiums. *See id.* ¶¶ 20-21, 42.

Because Mr. Levin sold the Policy to plaintiffs and continued to communicate with plaintiffs concerning the Policy's performance, these representations were not mere predictions, but rather "'matters within the speaker's control.'" *Carroll*, 848 F. Supp. 2d at 569 (citation omitted). Further, plaintiffs allege that Mr. Levin made these false representations "to induce Plaintiffs to invest their funds" in the Policy. ECF 1, ¶ 40. And, plaintiffs allege that they relied on these statements in deciding to purchase the Policy and to continue investing in it for a lengthy period of time, resulting in a loss of over $250,000. *Id.* ¶¶ 44-45. Therefore, plaintiffs have alleged sufficient facts to identify "the who, what, when, where, and how of the alleged fraud." *Wilson*, 525 F.3d at 379 (internal quotation marks omitted).

At the motion to dismiss stage, construing the facts in the light most favorable to plaintiffs, I am satisfied that the allegations in the Complaint are sufficient to state a plausible claim of fraudulent misrepresentation. Accordingly, I shall deny defendants' Motion with respect to Count III.

### B. The Baer Motion

Plaintiffs did not lodge a claim against Mr. Baer. But, as noted, defendants have sued Mr. Baer for indemnification and/or contribution.

Mr. Baer argues that he is entitled to summary judgment with respect to defendants' indemnification claim because defendants have not put forth evidence sufficient to establish that

he had a special relationship with defendants that could give rise to an implied duty of indemnification. ECF 33 at 6. As for defendants' contribution claim, Mr. Baer contends that the Court should grant summary judgment in his favor, asserting that he cannot be jointly liable for plaintiffs' injuries because defendants owed plaintiffs a special standard of care applicable only to insurance agents and because defendants have not shown that he engaged in tortious conduct. *Id.* at 9.

### 1. Indemnity (Count I)

Count I of the Third-Party Complaint, "Indemnity," alleges that defendants and Mr. Baer had a "special relationship" as a result of "[a] course of conduct with unique special factors . . . ." ECF 23, ¶¶ 21-22. According to defendants, Mr. Baer agreed to "bear the ultimate responsibility for the performance of the investment vehicles into which Plaintiff invested[.]" *Id.* ¶ 22. Thus, to the extent that defendants are found liable to plaintiffs, they assert that Mr. Baer is liable to them for indemnification. *Id.* ¶ 23.

Mr. Baer maintains that he is entitled to summary judgment because there is no evidence showing that he and defendants entered into a special relationship that could give rise to a claim for indemnification. ECF 33 at 7-8; ECF 39 at 2.

Maryland law recognizes three types of indemnity: (1) express contractual indemnity; (2) implied-in-fact indemnity, based on a special relationship between the parties; and (3) tort indemnity, which arises where equitable considerations require indemnification. *Pulte Home Corp. v. Parex, Inc.*, 403 Md. 367, 382, 942 A.2d 722, 730-31 (2008).

In this case, there is no explicit indemnity agreement. But, an implied right to indemnity "may arise from a special relationship between the parties, usually contractual in nature, or from a course of conduct." *Id.* at 382, 942 A.2d at 731; *see also Hanover Ins. Co. v. Eng'r Alliance, LLC*,

PX-8:15-cv-00112, 2019 WL 1002603, at *8 (D. Md. Mar. 1, 2019).  However, "'a contractual right to indemnification will only be implied when there are unique special factors demonstrating that the parties intended that the would-be indemnitor bear the ultimate responsibility . . . or when there is a generally recognized special relationship between the parties.'"  *Pulte Home Corp.*, 403 Md. at 382, 942 A.2d at 731 (ellipses in *Pulte Home Corp.*) (quoting *Araujo v. Woods Hole, Martha's Vineyard, Etc.*, 693 F.2d 1, 2-3 (1st Cir. 1982)).

To my knowledge, no Maryland appellate court has addressed in a published opinion what constitutes a "generally recognized special relationship" in the absence of a contractual relationship, and the parties point to none.  *See* ECF 33 at 7 (acknowledging absence of Maryland case law on the subject); ECF 36 at 5.  However, it appears that courts have adopted a restrictive view of the implied right to indemnity.  *See Hanover Ins. Co.*, 2019 WL 1002603, at *8 (noting that "[o]ften the special relationship is created by statutory or regulatory obligations"); *Hanscome v. Perry*, 75 Md. App. 605, 616, 542 A.2d 421, 426 (1988) (observing that "[g]enerally, the mere relationship between vendor and vendee does not, of itself, suffice to produce an implied contractual right of indemnification").

The paucity of authority leads me to return to the language in *Paulte Home Corp.*  Notably, the existence of a contractual relationship between the parties plays a prominent role in the discussion.  The Maryland Court of Appeals recognized that an implied right to indemnity may arise from a "special relationship between the parties" but noted that such a relationship will "*usually* [be] *contractual* in nature[.]"  *Paulte Home Corp.*, 403 Md. at 382, 942 A.2d at 731 (emphasis added).  In the next sentence, the Court explained that "not every *contractual* relationship will produce an implied indemnity."  *Id.* (emphasis added).  Rather, "'a *contractual* right to indemnification will only be implied when there are unique special factors demonstrating

that the parties intended that the would-be indemnitor bear the ultimate responsibility . . . or when there is a generally recognized special relationship between the parties.'" *Id.* (citation omitted). Thus, *Pulte Home Corp.* suggests that, at a minimum, courts should be especially reluctant to find an implied right of indemnity where the parties have no contractual relationship.

Nonetheless, even assuming that a course of conduct alone can give rise to a special relationship, there is no evidence in the record that such a relationship existed between defendants and Mr. Baer. Defendants maintain that they entered into a special relationship with Mr. Baer, "in light of the . . . initial meeting among Ms. Armellini, Baer, and Levin in November 2009." ECF 36 at 6. During that meeting, according to Mr. Levin, Mr. Baer offered advice as to Ms. Armellini's financial ability to fund the Policy, and he recommended to Ms. Armellini the amounts that she should invest in the Policy. ECF 36-2, ¶¶ 11, 13. But, one meeting does not amount to a "course of conduct." And, defendants have put forth no evidence that they had any relationship with Mr. Baer, either before or after the November 2009 meeting. Indeed, they do not challenge Mr. Baer's averment that he never met Mr. Levin prior to the meeting at issue. ECF 33-1, ¶ 9.

Moreover, the facts provided by defendants pertaining to Mr. Baer's conduct at the meeting all relate to Mr. Baer's interactions with Ms. Armellini. Specifically, Mr. Levin states that Mr. Baer described the proposed investment strategy to Ms. Armellini, ECF 36-2, ¶¶ 9-10; "expressed his opinion . . . as to the amount that Ms. Armellini should fund, or would be able to fund," *id.* ¶ 11; and "recommended, endorsed, and approved" Ms. Armellini's decision to obtain the Policy. *Id.* ¶ 13. Significantly, none of these statements involve Mr. Levin or Worthington. Nor do any of these statements evidence an intent on the part of either Mr. Baer or defendants that he would be liable in the event that Ms. Armellini suffered losses as a result of investing in the Policy. Thus, there is no basis in the evidentiary record for a reasonable fact finder to conclude

that Mr. Baer forged a relationship with defendants, much less a special relationship, that warrants hoisting a duty of indemnity onto Mr. Baer for defendants' allegedly tortious conduct.

Accordingly, Mr. Baer is entitled to summary judgment with respect to Count I.

### 2. Contribution (Count II)

Defendants also assert a contribution claim against Mr. Baer. In Count II, they allege that, to the extent defendants are liable to plaintiffs, Mr. Baer is jointly liable because he "recommended, counseled, endorsed and approved Plaintiffs' investment" in the Policy. ECF 23, ¶ 26; *see id.* ¶¶ 24-30.

Mr. Baer argues that this claim fails as a matter of law because he "is not, and could not be, held to the same liability standard as Levin and Worthington with regard to the performance of the [Policy]," as he is not subject to the heightened standard of care that Maryland law imposes on insurance agents such as defendants. ECF 33 at 9. Therefore, in Mr. Baer's view, he "could not rightly be said to be under a common burden or liability" with defendants. *Id.* And, he contends that there is nothing in the evidentiary record to show that he intentionally misled plaintiffs or mismanaged their investments, which is the conduct underlying the Complaint. ECF 39 at 4. As Mr. Baer views it, defendants merely seek "to foist liability on [him] for referring to them a client." *Id.*

The doctrine of contribution provides for "the distribution of loss among culpable parties in accordance with their proportionate shares. It is defined as 'a payment made by each, or by any, or several having a common interest of liability of his share in the loss suffered, or in the money necessarily paid by one of the parties in behalf of the others.'" *Hartford Acc. & Indem. Co. v. Scarlett Harbor Assoc. Ltd. P'ship*, 109 Md. App. 217, 280, 674 A.2d 106, 137 (1996) (citation omitted), *aff'd*, 346 Md. 122, 695 A.2d 153 (1997). The doctrine is not based on contract or tort.

Rather, it is based on principles of equity. *Lyon v. Campbell*, 324 Md. 178, 182, 596 A.2d 1012, 1014 (1991).

Under Maryland's Uniform Contribution Among Tort-Feasors Act ("UCATA"), a defendant may seek contribution from a joint tortfeasor where "two or more persons [are] jointly or severally liable in tort for the same injury to a person or property, whether or not judgment has been recovered against all or some of them." Md. Code (2013 Repl. Vol.), Cts. & Jud. Proceedings Art. ("C.J."), § 3-1402(c). Thus, there are two prerequisites to contribution. First, the parties must share a common liability or burden. Second, the party seeking contribution must have paid, under legal compulsion, more than his fair share of the common obligation. *See Heritage Harbour, L.L.C., et al., v. John J. Reynolds, Inc., et al.*, 143 Md. App. 698, 714, 795 A.2d 806, 815 (2002).

Notably, "'[c]ontribution rests on common liability, not on joint negligence or joint tort.'" *Parler & Wobber v. Miles & Stockbridge*, 359 Md. 671, 687, 756 A.2d 526, 534 (2000) (citation omitted). And, "'[c]ommon liability exists when two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds.'" *Id.* (citation omitted); *see also Day v. Robbins*, 179 F. Supp. 3d 538, 542 (D. Md. 2016). But, because "'contribution from a third party defendant is predicated on his or her direct liability to the plaintiff,' there is no right of contribution where the plaintiff has no right of action against the third party defendant." *Renick v. Sperau*, CCB-12-1627, 2013 WL 1314417, at *6 (D. Md. Mar. 29, 2013) (quoting *Fullwood Foods, Inc.*, 111 F. Supp. 2d 712, 715 (D. Md. 2000)); *see also* Paul Mark Sandler, James K. Archibald & Paul Jorgensen, Pleading Causes of Action in Maryland, § 15.5 (6th ed. 2018).

To reach a jury on this claim, defendants must provide evidence sufficient to create a genuine dispute of material fact as to whether Mr. Baer is liable to plaintiffs for the injuries alleged

in the Complaint. Defendants have failed to do so. The facts that defendants have mustered show only that Mr. Baer provided advice to Ms. Armellini concerning the Policy during one meeting in November 2009, and that Ms. Armellini relied on that guidance in deciding to obtain the Policy and the amount to invest. ECF 36-2, ¶¶ 8-11, 13-14. There is no evidence in the record that Mr. Baer offered advice that was knowingly false or even negligent. Nor is there evidence that he had made any representations to plaintiffs concerning the Policy after the initial meeting. And, defendants do not challenge Mr. Baer's averment that he has never received a commission based on payment by plaintiffs of the Policy's premiums.

Consequently, defendants have provided no evidence that Mr. Baer committed a tort that harmed plaintiffs. And, because plaintiffs have no right of action against Mr. Baer, defendants are not entitled to contribution from Mr. Baer under the UCATA. *See Woods v. Dolgencorp, LLC*, TJS-15-3249, 2017 WL 4712198, at *3 (D. Md. Oct. 18, 2017) (Sullivan, M.J.) (finding third-party defendant was entitled to summary judgment on third-party plaintiff's contribution claim where "there [wa]s no evidence that [the third-party defendant] breached any duty it owed to [the plaintiff], or that [the third-party defendant's] negligence was causally related to [the plaintiff's] injuries"); *Sherwin-Williams Co. v. ARTRA Grp., Inc.*, 125 F. Supp. 2d 739, 754 (D. Md. 2001) (same).

Therefore, I shall grant summary judgment in favor of Mr. Baer with respect to Count II.

## V.    Conclusion

For the foregoing reasons, I shall grant in part and deny in part the defendants' Motion (ECF 21). In particular, I shall dismiss Counts IV and V against Worthington. And, I shall dismiss Counts I and II against Mr. Levin. However, I decline to dismiss Count III. In addition, I shall

construe the Baer Motion (ECF 33) as one for summary judgment and grant it.

An Order follows, consistent with this Memorandum Opinion.


Date: January 9, 2020                        _____/s/_____
                                             Ellen L. Hollander
                                             United States District Judge